T.C. Memo. 2017-67

UNITED STATES TAX COURT

SEAN M. MURRAY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23464-15.                    Filed April 20, 2017.

Sean M. Murray, pro se.

<u>Christopher D. Davis</u> and <u>Timothy A. Froehle</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  With respect to petitioner's Federal income tax for 2012, the Internal Revenue Service (IRS or respondent) determined a deficiency of $15,295, additions to tax of $3,441 and $1,912 under section 6651(a)(1) and (2),

[*2] and an addition to tax of $274 under section 6654(a).[1] All of the adjustments are attributable to unreported income.

Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that he is entitled to judgment as a matter of law. We will grant the motion and sustain respondent's determinations. Finding that petitioner's position is "frivolous or groundless" and that he instituted and maintained this case "primarily for delay," we will also require him to pay to the United States under section 6673(a)(1) a penalty of $1,500.

## Background

The following facts are derived from the parties' pleadings and respondent's motion papers, including the declaration and exhibits attached thereto. Petitioner resided in New York when he filed his petition.

Petitioner did not file a Federal income tax return for 2012. The IRS received information reports from third parties regarding his income for that year. The IRS received from Saratoga Community Federal Credit Union a Form 1099-INT, Interest Income, reporting that petitioner had received interest income of $16. The IRS received from Chase Bank USA Forms 1099-C, Cancellation of Debt, re-

---

[1] All statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[*3]** porting that petitioner had received cancellation of indebtedness income in the aggregate amount of $18,953. And the IRS received from MassMutual Retirement Services a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting that petitioner had received a retirement plan distribution of $48,459. The distribution code on this form described the distribution as an "early distribution, no known exception (in most cases, under age 59)" and stated that the "taxable amount" was $48,459.

On the basis of these third-party information reports the IRS prepared for petitioner a substitute for return (SFR) that met the requirements of section 6020(b). The IRS determined that petitioner had received the three items of income specified above and that he was liable for an additional tax of $4,846, equal to 10% of the $48,459 early distribution. See sec. 72(t). The SFR accorded petitioner the filing status of married filing separately; allowed him the standard deduction and one personal exemption; determined that his total corrected tax liability was $15,295; determined additions to tax under section 6651(a)(1) and (2) for failure to timely file and pay; and determined an addition to tax under section 6654(a) for failure to pay estimated tax.

**[\*4]** On June 22, 2015, the IRS sent petitioner a timely notice of deficiency setting forth these adjustments, and he timely petitioned this Court. In his petition he did not deny receiving any of the income in question or assign error to any of respondent's determinations. Rather, he disputed "the obligation or liability to file a tax return for Sean M. Murray" and recited gibberish commonly appearing on tax-protester websites.

Commencing with his petition, petitioner engaged in a series of actions evidently designed to throw sand into the gears of this Court's case-docketing procedure and delay the trial of his case. Although alive and well, he captioned his petition: "Murray, Sean Michael as Executor of Sean Michael Murray Estate." And although residing in New York, he requested a place of trial in San Francisco.

Misled into believing that petitioner was the executor of a decedent's estate, we ordered the caption amended to include the phrase, "Estate of Sean Michael Murray, a.k.a. Sean M. Murray, Deceased." On October 22, 2015, petitioner filed a motion to vacate that order, asserting that "as executor" he was "the real party in interest" and that his original caption was correct. He concurrently filed a change of address form showing a new address in Oakland, California.

We directed respondent to express his view as to petitioner's motion and the proper captioning of this case. In a response filed November 13, 2015, respond-

[*5] ent's counsel informed the Court that he had called the New York telephone number reported on the petition and spoken with petitioner, "who stated something to the effect that he filed the case on behalf of 'Sean M. Murray,' the artificial person." Respondent noted that the notice of deficiency was issued to petitioner as an individual; that he was alive; and that the case should be recaptioned to show "Sean M. Murray" as petitioner.

We ordered the case recaptioned as respondent urged and directed petitioner to file, within three weeks, a ratification of his petition with the signature of the correct taxpayer. On December 16, 2015, petitioner filed a 40-page response replete with tax-protester gibberish. He asserted that respondent had violated various Federal criminal statutes and had "fail[ed] to cite a reason or explanation" for his request that the case be recaptioned. He denied "the claim that Sean M. Murray is alive and well * * * for lack of sufficient knowledge or information." And he attached a "durable power of attorney" and an IRS Form 2848, Power of Attorney and Declaration of Representative, purporting to authorize him to represent the "Sean Michael Murray Estate." On February 23, 2016, he filed another frivolous document that he signed "as executor."

We calendared this case for trial in San Francisco, California, as petitioner had requested. On August 30, 2016, more than two months after his case was

**[\*6]** calendared, he filed a motion, again signed by him "as executor," to change the place of trial to Albany, New York. He asserted in that motion that he "is not a resident of either San Francisco, California, or Albany, New York" but "is domiciled in San Jose, Costa Rica." We denied that motion, explaining that Albany was reserved as a place of trial for small tax cases only. See Rule 174; Tax Court Form 5 (App. I, Tax Court Rules of Practice and Procedure).

On September 12, 2016, petitioner filed a cut-and-pasted version of his prior motion, this time requesting that the place of trial be changed to New York, New York. He again asserted that he was not a resident of New York but was "domiciled in San Jose, Costa Rica." As a justification for changing the place of trial he asserted vaguely that "circumstances have changed considerably" since he originally requested trial in San Francisco. Because petitioner appeared to reside in New York, respondent did not object to this motion; and on November 10, 2016, we recalendared the case for trial in New York City on April 3, 2017.

On November 30, 2016, respondent filed a motion for summary judgment. Counsel for respondent represented that he had telephoned petitioner to ascertain his correct address for service of this motion. Petitioner replied that he was in an "'address confidentiality program' run by the Secretary of State."

**[\*7]** In his response to the summary judgment motion petitioner "generally denies receipt of the income identified in the notice of deficiency" but adduces no facts to support this allegation. He asserts that respondent's motion is "incorrect in its assertion of a requirement to file a return and seemingly represents a willful attempt to circumvent due process requirements with baseless claims of frivolous arguments." He asserts, without adducing any supporting facts, that "no valid debt was cancelled and that no pension distributions were taxable for 2012, leaving no income to report." He refuses to respond to respondent's contention that he does not occupy the status of an "executor," asserting that respondent "fails to provide a definitive statement or specific reference with which to respond."

Discussion

A.    <u>Summary Judgment Standard</u>

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment we construe factual materials and inferences drawn from them in the

**[\*8]** light most favorable to the nonmoving party.  Ibid.  However, the nonmoving party "may not rest upon the mere allegations or denials" of his pleadings but instead "must set forth specific facts showing that there is a genuine dispute for trial."  Rule 121(d); see Sundstrand Corp., 98 T.C. at 520.

Petitioner has set forth no facts showing that there is a genuine dispute for trial.  As the basis for his position he insists that he has no obligation to file Federal income tax returns, a frivolous legal position.  While generally denying receipt of taxable income, he has adduced no specific facts to support that claim.  We conclude that there are no material facts in dispute and that this case is appropriate for summary adjudication.

B.    Unreported Income

The IRS' determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The IRS can prove an underpayment of tax stemming from unreported income by showing (among other things) a likely source of the unreported income.  DiLeo v. Commissioner, 96 T.C. 858, 873-874 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).  Once respondent has produced evidence linking the taxpayer to an income-producing activity, the burden of proof shifts to the taxpayer to prove by a preponderance of the

**[\*9]** evidence that respondent's determinations are arbitrary or erroneous.  Helvering v. Taylor, 293 U.S. 507, 515 (1935); Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986).

The notice of deficiency determined three adjustments involving unreported income.  The IRS received from Saratoga Community Federal Credit Union a Form 1099-INT reporting that petitioner had received interest income of $16.  The IRS received from Chase Bank USA Forms 1099-C reporting that petitioner had received cancellation of indebtedness income in the aggregate amount of $18,953.  And the IRS received from MassMutual Retirement Services a Form 1099-R reporting that petitioner had received a taxable retirement plan distribution of $48,459.  On the basis of this credible evidence we are satisfied that respondent has proved a likely source of the unreported income.  The burden of proof thus shifts to petitioner to show that respondent's determinations were arbitrary.[2]

---

[2]Section 6201(d) provides that, "if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return * * * and the taxpayer has fully cooperated with the Secretary," the IRS may not rely solely on the information return to satisfy its burden of production.  Petitioner has not alleged a "reasonable dispute" concerning the information returns, merely asserting, with no supporting documents or facts, that "no valid debt was cancelled and that no pension distributions were taxable for 2012."  And far from "fully cooperating" with the IRS, petitioner has repeatedly sought to delay this case by advancing tax-protester arguments.  See Parker v. Commissioner, T.C. Memo. 2012-66, 103 T.C.M. (CCH) 1321, 1323 (finding section 6201(d) inapplicable where the tax-

(continued...)

**[\*10]** Petitioner has not satisfied his burden of proof. He failed in his petition to assign error to any of respondent's determinations, asserting instead that he had no "obligation or liability to file a tax return." Under Rule 34(b)(4) any issue not raised in the assignments of error is generally deemed conceded. In any event petitioner has set forth no facts and submitted no documentary evidence to show that he did not receive these items of income or that the income he received was not taxable. See Rule 121(d). We conclude that respondent's determinations of unreported income as set forth in the notice of deficiency are correct, and those determinations are sustained. See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97; Powerstein v. Commissioner, T.C. Memo. 2011-271, 102 T.C.M. (CCH) 497, 506.

C.    Section 72(t) Additional Tax

When a taxpayer receives a distribution from a qualified retirement plan, section 72(t)(1) generally provides that his tax shall be increased "by an amount equal to 10 percent of the portion of such amount which is includible in gross income." The statute enumerates several well-known exceptions to this rule, e.g., where the taxpayer receiving the distribution has attained the age of 59-1/2 or is

---

[2](...continued) payer "did not bring any factual dispute over any item of income to the IRS' attention within a reasonable time" but instead raised frivolous arguments).

[*11] disabled or where the distribution is used to pay deductible medical expenses. See sec. 72(t)(2)(A)(i), (iii), (B).

Because section 72(t) imposes a "tax" rather than a penalty or an addition to tax within the meaning of section 7491(c), petitioner has the burden of production on this issue. See El v. Commissioner, 144 T.C. 140, 145-149 (2015). Petitioner has alleged no facts and produced no evidence showing that he had attained the age of 59-1/2 when he received the distribution or that any other statutory exception applies. We will accordingly sustain respondent's determination that he is liable for an additional tax of $4,846 under section 72(t).

D.    Additions to Tax

1.    Section 6651(a)(1)

Section 6651 provides for an addition to tax of 5% of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file the return, not to exceed 25% in toto. Respondent has his burden of production on this issue. See sec. 7491(c). Respondent included with his summary judgment motion a redacted Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, which shows that petitioner did not file a return for 2012. This was sufficient to satisfy respondent's burden of production. See Robertson v. Commissioner, T.C. Memo. 2014-143, 108 T.C.M. (CCH) 56, 57.

**[\*12]** Petitioner has supplied no evidence that he filed a Federal income tax return for 2012. Indeed, by persistently asserting that he had no obligation to file such a return, he has effectively admitted that he did not do so. He has alleged no facts and produced no evidence showing that this failure "was due to reasonable cause and not due to willful neglect." See sec. 6651(a)(1). We will accordingly sustain respondent's determination that petitioner is liable for the addition to tax under section 6651(a)(1).

2.    Section 6651(a)(2)

Section 6651(a)(2) provides for an addition to tax when a taxpayer fails to pay timely the tax shown on a return unless the taxpayer proves that the failure was due to reasonable cause and not due to willful neglect. To meet his burden of production under 7491(c) with respect to the section 6651(a)(2) addition to tax, respondent must provide evidence of a tax return. See Wheeler v. Commissioner, 127 T.C. 200, 208-211 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008). An SFR that meets the requirements of section 6020(b) is treated as the "return" filed by the taxpayer for this purpose. See sec. 6651(g).

Respondent has met his burden of production by producing a certified copy of the SFR that the IRS prepared on petitioner's behalf. Cf. Gardner v. Commissioner, T.C. Memo. 2013-67, 105 T.C.M. (CCH) 1433, 1439 (finding that, for pur-

**[\*13]** poses of section 6651(a)(2), the Commissioner did not provide sufficient evidence of a tax return merely by producing the taxpayer's account transcripts). Petitioner has not paid the tax shown on that return, nor has he alleged or adduced facts to show that his failure was "due to reasonable cause and not due to willful neglect." See sec. 6651(a)(2). We will accordingly sustain the addition to tax for petitioner's failure to pay timely his income tax liability for 2012.

    3.    Section 6654(a)

Section 6654 imposes an addition to tax on an individual who underpays his estimated tax. The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability. Sec. 6654(c) and (d). Each required installment is equal to 25% of the "required annual payment." Sec. 6654(d). The "required annual payment" is equal to the lesser of: (1) 90% of the tax shown on the individual's return for that year (or, if no return is filed, 90% of his tax for such year) or (2) if the individual filed a valid return for the immediately preceding taxable year, 100% of the tax shown on that return. See sec. 6654(d)(1)(A), (B), and (C). Where a taxpayer has not filed a return for the current tax year or the immediately preceding tax year, the "required annual payment" is equal to 90% of the tax due for the current year. Sec. 6654(d)(1)(B).

**[\*14]**  Respondent's burden of production under section 7491(c) requires him to produce, for each year for which the addition is asserted, evidence that the taxpayer had a "required annual payment" under section 6654(d).  To do so respondent must establish the tax shown on the taxpayer's return for the preceding year or demonstrate that the taxpayer filed no such return.  See Wheeler, 127 T.C. at 212; Schlussel v. Commissioner, T.C. Memo. 2013-185.

Respondent met his burden of production by including with his summary judgment motion a redacted Form 4340 showing that petitioner did not file an income tax return for 2011.  See Robertson, 108 T.C.M. (CCH) at 58.  Petitioner's "required annual payment" thus equaled 90% of the tax due for 2012.  See sec. 6654(a), (d)(1)(B).  Petitioner has not alleged and has adduced no facts indicating that he made any estimated tax payments for 2012.  We will accordingly sustain the section 6654(a) addition to tax.

E.    Frivolous Position Penalty

Section 6673(a)(1) authorizes this Court to impose a penalty not in excess of $25,000 whenever it appears that the taxpayer has instituted or maintained the proceeding "primarily for delay" or has taken a position that is "frivolous or groundless."  Sec. 6673(a)(1)(A) and (B).  The purpose of section 6673 is to compel taxpayers to conform their conduct to settled tax principles and to deter the

**[\*15]** waste of judicial resources.  See <u>Coleman v. Commissioner</u>, 791 F.2d 68, 71 (7th Cir. 1986); <u>Bruhwhiler v. Commissioner</u>, T.C. Memo. 2016-18, 111 T.C.M. (CCH) 1071, 1074.

Petitioner has repeatedly advanced numerous frivolous positions in this Court.  These include assertions that he has no obligation to file Federal income tax returns, that he is the executor of the estate of an artificial person, and that respondent's counsel has violated criminal provisions of the United States Code. He has also engaged in tactics patently designed to delay the final determination of his Federal income tax liability, including filing documents with misleading captions, making multiple unjustified requests to change the place of trial, and submitting documents containing obvious falsehoods and laced with tax-protester gibberish.  He has repeatedly wasted the resources of respondent's counsel and this Court.  We will accordingly require that he pay to the United States under section 6673(a) a penalty of $1,500.  This opinion will serve as a warning to petitioner that he risks a much larger penalty if he engages in similar tactics in any future appearance before this Court.

[*16]  To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.